Our first case for this afternoon is Nekrilov v. City of Jersey City. I hope I pronounced that okay. Number 21-1786. You can proceed. Good afternoon, Your Honor. James Van Splinter, Cranjack Tripodium Partners. You don't have to wear your mask for argument. Thank you, Your Honor. John Stang, Jiu Chen, and Allen Stooner. So they pronounce it Nekrilov on the first syllable, is it, or Nekrilov? Nekrilov, I believe, Your Honor. Thank you. And if it please the Court I request two minutes for rebuttal. That will be granted. Thank you, Your Honor. This is a takings case primarily arising under the Fifth Amendment. And it arises under a pretty unique set of circumstances, at least as best as I can tell, Your Honor. Where the municipality here, Jersey City, affirmatively invited, through an affirmative ordinance and a concomitant media blitz, investment into the city for a specific purpose and to operate a specific type of business. Specifically here, Airbnb-style short-term rental business. The plaintiffs, all individuals of modest means, were induced by this ordinance, affirmatively Isn't there an overarching question here that, if we accept your position, are we saying that townships can't switch policy? Absolutely not, Your Honor. Absolutely not. For two reasons. First of all, towns can change their position and all businesses are subject to regulation. We acknowledge that. The issue here is the reasonable expectation of, the reasonable investment-backed expectation of the claimants. And here the issue is, and as Kaiser instructs us, a takings claim is a factual ad hoc analysis. Here the issue is the regulation didn't come out of a vacuum or an unregulated area or even it was an affirmative invitation to investment for this purpose, which created that expectation interest in the plaintiffs. And it was the particular circumstance of the change before any reasonable return on investment could be actualized, which renders the taking here under the specific circumstances of this case, which is why I believe also, Your Honor, this case is very unique in the takings realm. It really is. I mean, if we can turn to the legally cognizable interest, generally a regular sort of what we learned about in property, we understand that. But you're alleging something a little bit different. As the district court sort of termed it, you're talking about a forward-looking right to conduct short-term rental business. Among other things, Your Honor. And yes, there are four baskets of property interest, three of which are not, I don't think, controversial in terms of whether they're property interest, whether there's a taking, obviously, we're here today. But the fee simple properties, the contracts, the short-term contracts themselves, and then the long-term contracts, which gave rise through subletting to the short-term contracts, those are all, I think, non-controversially property interests. The third is the right to operate the short-term rental business, which under New Jersey law, which is the guiding light as to the creation of property interest, New Jersey law has recognized the right to operate one's property in the Longo v. Riley case and others, which are cited in our brief. What do you consider short-term? I believe, and Mr. Chambers can correct me if I'm wrong, it's 29 days, I believe, or fewer, per the terms of the statute, Your Honor, or the ordinance, I should say. So what if somebody wants to stay longer than 29 days? If you're over 29 days, I believe you don't come within the ambit of the new ordinance 19077. The issue that the plaintiffs face and others in the city face is that that business model is a very different business model than the short-term rental, where essentially visitors, whether they're business visitors or tourists or otherwise, are coming to the city for a short period of time, a long weekend, a week, and there's a turnover. Once you're into the 30 days, the market for folks who need a property for 30 days versus a long, regular, traditional-style lease, that's a very small cohort of people, and you can't operate the business in anything approaching a profitable manner under that rubric. The short-term rental, where it could be overnight, two days, three days, that's where the profitability of the business lies, and that's what these plaintiffs were induced to invest for that purpose. When you cited the Longo case, and you cited some other cases, too, those weren't constitutional cases so much as tort-type actions, right? I agree with that, Your Honor, and I don't necessarily think it's required that the determination of the property interest be found in the constitutional case to determine that there is a property interest there, but what I would further say, and we also cited two cases from this circuit, that municipal and state action can create a cognizable property interest even where one otherwise didn't exist, and here, given the affirmative, this is not permitted in the breach, this was, or passively, but the affirmative permission to operate this type of business, along with the unquestionable invitation to do so, created it, and then when colored by the general New Jersey law, that recognizes a property interest in operating your own business. Well, then, how do we go, how do you square that, then, with the language from the College Savings Bank case, I guess it is, can't remember the exact name, but I actually wrote down a quote, business in the sense of the activity of doing business or the activity of making a profit is not property in the ordinary sense, so, you know, is that, how does that square with your theory you're talking about now? I think that's because, again, of the unique circumstance here where this was created, right, this interest was created, somebody didn't create a pop-up business in an unregulated field or something that was new and then subsequently subjected to regulation, which they should expect would happen, and that's why, really, the two factors for that basket of property, it really blends with the Penn Central analysis of the expectations. This expectation was created, and it can be created by government business, by government action, rather, and what we have here is we understand also that when, and then that, in turn, dovetails with the issue of the economic harm and the forward-looking nature in terms of those businesses, and in that circumstance, we know that some courts have held that lost future profits can be a cognizable cause of, or source of economic damage from a takings analysis. Does the owner of the property have to live in the, have to reside in the property? Today. What happens if the owner does not? With one minor exception, today they do, prior they did not. The owner has to be there. It needs to be owner-occupied, except under the new ordinance, the owner may use one other property as long as he or she has an employee representative there at that property. All right. Like a superintendent or something like that? Exactly, Your Honor. The issue here is the invitation was, there was no limit, there was no limitation. If you went over five properties, you needed to get a license, but the circumstances whereby the city could deny a license are very, very limited and not relevant here. I think it was something about, if you had a criminal background and some other non-relevant to this case circumstances, otherwise the sky was the limit in terms of how many properties you could operate, and all of the plaintiffs here were over five. So that's, so the taking takes place up to at least, once you begin after at least the second property. The way it is or the way it was? The way it was was no limit, subject to that pro forma license, and today the limit is two, the owner-occupied. Two properties? The owner-occupied property, yes, Your Honor, and then secondarily, a satellite property if the owner has an underemployed representative there. Okay. You can move to your next point. Pardon, Your Honor? You can move to your next point. Oh, excuse me, thank you. So, when we look at these baskets of properties, there's really then two analyses to determine whether they were taken, and one is the per se takings test, and one is the Penn Central Regulatory. Now, for the contracts that were lost, absolutely lost and eviscerated, we would argue that the per se test applies to them. They're gone. For the remainder, we really look at the Penn Central. I would argue that also that this Court should adopt the holding in the Federal Court, the Federal Circuit held in the Lost Tree, where if you're forced to do nothing with your property but sell it, then that also would be a taking. And here we have the fee simple properties, the plaintiff's- There's a lot of beneficial uses for this property. You can sell them, right, if they're owned in fee simple, I suppose. You can live in them. You can lease them still. I mean, not all beneficial uses have been squelched, I guess. Right, and there's, I believe, a split in authority there as to if you're left with just the ability to sell. And the Lost Tree doctrine that the Federal Circuit applied was if you're forced just to sell it, that's not considered an economic use because you're basically being divested of the property. Well, there are other things. I mean, they can live there and they can still lease it. And that's why then we also then go to the Penn Central regulatory partial taking, right, when not all beneficial use of the property is lost but rather a portion. And then that test has three very famous factors. And the primary one, and sometimes the overarchingly and eclipsing the others, is the reasonable investment-backed expectations of the claimant. And here under this record, I would respectfully posit that it's hard to think of a case where a claimant can have more reasonable investment-backed expectations. The city passed this ordinance which affirmatively permitted this business, and it did it in the context of a major media blitz led by the mayor but also by other members, elected members of the city council, differentiating Jersey City from the surrounding municipalities because every other major municipality in the area severely restricted Airbnbs. And in an effort to draw in investment dollars and to draw in, you know, professionals and folks who are going to bring money into Jersey City, and this is all in the record, these are all statements that were made by city officials, they passed this ordinance. I mean, can I run this by you, perhaps an example that I found hard to follow. Gennady and Eugene Necrolaw, ring a bell to you? These two individuals apparently owned something like seven, had 17 leases. That sounds about right at one point, Your Honor, yes. In Jersey City. Now, what was the problem with their having 17 leases? Well, in 2015, as per 15.137, in terms of the number of leases, they obviously could not reside in all of those properties. And they were absolutely permitted under the terms of that ordinance to operate in those numerous leases, as Your Honor referenced. Now they cannot. Okay. Now they cannot. That was okay then, but you can't do that now. Okay then. So the owner has to be in the property? In the property, or have their one representative for one other property. Everything else is gone, unable to use for this purpose. Okay. That's right. And do you have limits as to the, I mean, these are bed and breakfast, I guess, or B&B, or whatever it's called? It's called Airbnb, it's akin to a bed and breakfast style, where folks would, they would use the Airbnb app to register to stay at this particular residence for a period of time. Okay, and period of time is where I was going to get to. Right. You can't stay there six months, I guess. Honestly, in full candor, I believe you could probably work that out on Airbnb, it's not really what that app is directed towards. It's directed towards a short term for visitors, potentially business visitors, tourists. So you can't stay more than 30 days? I think on the app, you can set the timeframe that you're looking for, and then the owners can set the timeframe that they are happy to rent it for, and that can be done. Nothing wrong with that, then. Okay. Can I ask you sort of a nuts and bolts factual question? Do the plaintiffs have any short term contracts that existed before the passage of the 2019 ordinance, but not covered by the transition period? You know, those after June 25th, 2019, that are not set to be complete before January 1st of 21? Understood, your honor. There are a greater than zero number of bookings that were lost by virtue of... There was some number, but you just... Some number... Well, I'm talking about the contracts. Pardon me? Not just one and two, I'm talking about short term contracts that weren't covered by this transition period. I think when we're referring to the short term contracts, we're really referring to the bookings between the individual and the tenant. You don't have an exact number, I guess, but there's some number. No, and quite frankly, it's not a huge number because the nature of how the app works, it's not very, very far into the future when you book, but there were contracts that were lost and bookings that had to be canceled. But there was a transition period, right, and that was not sufficient to protect you from damages for terminating, because on Airbnb, often these bookings can be terminated. So, was the transition period not sufficient to protect your client from out-of-pocket damages? It was not, your honor, and there's two reasons for that. The transition period really only applied to lessor renters. So, in other words, under the circumstance where you would lease out a property and then sublease it. So, for the owned properties, there really was no grace period. But where should we look in the record to understand what existing contractual relationships were disrupted by this? In terms of the long-term contracts, your honor, those are, in addition to in the complaint and the certifications of the plaintiffs, I do believe the district court made a pretty robust appendix to the decision that listed those out. In terms of the short-term rentals that were lost, I believe, your honor, and I hope I'm accurate, that those are in the certifications of the plaintiffs and referenced therein. You can't do the short-term lease if you don't live in the property. Is that right? Is that accurate? Short-term lease? Under the new ordinance, you can no longer do it if you're not owner-occupied unless you have the representative for your second property. You have what? The representative. Oh, a representative. Okay, but you yourself can't do that. Is that right? You are permitted under limited circumstances, which, as we set forth in the papers, don't provide for a reasonable rate of return, but there's a small amount of days by which an owner may rent out some short-term rentals in the property that he does or she does own and live in. Okay. Okay, thank you.  We'll get some rebuttal. May it please the Court, Stevie Chambers, Assistant Corporation Counsel on behalf of the City of Jersey City. Your Honors, the District Court correctly dismissed plaintiff's complaint primarily based on a takings claim and properly denied the request for restraints because plaintiff failed to plead an actionable Fifth Amendment takings claim. As you are aware, the Fifth Amendment takings claim offers relief in very narrow and limited circumstances, and this case does not fall within the narrow and limited circumstances. My adversary argued that the three-prong test under the Penn Central test was satisfied, but he is mistaken. One thing that's important to recognize is that the function of the Penn Central test is to And the impact has to be so severe, so severe as to remove the beneficial use of the property, and we don't have that in this case. So with regard to the first two prongs that the Court is fully aware of, the overlap, the economic impact of the regulation and whether the regulation, the extent to whether the regulation had a distinct investment-backed, violated a distinct investment-backed expectation or how my adversary puts it, a reasonable investment-backed expectation. Plaintiff primarily bases his argument on the argument that Jersey City subverted his rights or subverted the plaintiff's rights by passing Ordinance 19-077 in 2019 that placed reasonable limitations on short-term rentals. However... I asked your adversary to start. I mean, is the way that Jersey City did this by affirmatively legalizing short-term rentals differentiate this case from all the other cases that you've cited? It does not for a few reasons. For one, when Jersey City legalized short-term rentals in 2015, they did so with significant qualifications and warnings. For instance, my adversary talked about Jersey City engaging in a media blitz is the term that he used in 2015 to promote the ordinance. However, if you look at the record as provided by my adversary, the only statements provided by Jersey City officials in 2015 regarding this ordinance was an article by Mayor Fulop, a short article by Mayor Fulop and a press release that accompanied the ordinance. The article and the press release both made it clear that the purpose of the ordinance was, and this is paraphrasing what the terminology in those documents, was to provide middle-class folk the opportunity to earn a bit of extra money by renting out extra rooms in their house, but not so many extra rooms as to create an informal Airbnb in residential areas. Is that what's happening? Instead of one room renting out for a couple or more, it's getting full of people that much more than the city anticipates? Yes. So the original ordinance has some unintended consequences. For lack of a better term, people don't want to live next to party houses, houses that are exclusively rented out year-round, and since the owner's not there, things happen that the neighbors have to deal with, but the owner does not have to deal with. That's a good point. You say the owner is not there. I got the impression from hearing counsel that usually the owner is there in the house. That's the impression I got. Not under the old ordinance. The old ordinance had one limitation. So there's a new ordinance that requires the owner to be present on the property? Yes, with one exception, as my adversary said. The owner can be present in one property and rent out extra rooms in that one property, and that same owner, if they own an additional property, one additional property, can hire someone to be a representative and be present while that property gets rented out. Is that not what's taking place? Currently, that is the effective law. Yes. So what is occurring that's wrong? Oh, currently, nothing. But the issue was that based on the first ordinance that was passed in 2015, that created unintended consequences. The new ordinance, and we were just discussing that, that's working out fine, but the old ordinance had unintended consequences. Sorry, go ahead. So what is it that you're asking us to decide? We're asking you to affirm what the district court said, that this case is not constituted taking under the Fifth Amendment. Okay. But there's no question, the mayor having said some things, a number of people came in and invested, they relied on these statements, et cetera, and so there's this period of four years, and then they do this about face. And in the meantime, what they're saying is they are not able to make the payments on these properties. So what do you have to say to those investment-backed expectations? Okay, so investment-backed expectations are only reasonable if you take into consideration the ability of the government to govern in the interest of the public. And in this case, it's very important, the first thing that you said in your question is very important, that there were warnings to everyone that when we pass short-term rentals, we do not want informal Airbnb hotels in residential areas. Now, we can quibble with what informal hotels mean. However, what's undisputed is plaintiffs were fully aware of these statements before they invested, and they took a chance. Did you say that you don't want the Airbnbs located in residential areas? Informal Airbnb hotels, meaning dwellings that are 100% of the time used as short-term rentals. Okay. Such as a house, a house that's exclusively used as a short-term rental. I mean, you do license these structures, don't you? You grant permission for them to operate in this fashion? By you, I mean the city. Oh, what's that? They do have to get permits and things like that? To operate what? I'm sorry. An Airbnb? Oh, okay. So, it depends on the time frame. In 2015, when we originally passed the ordinance, the original ordinance that legalized short-term rentals with some restrictions, the one qualification was you can only rent out five units without a permit. My adversary is mistaken when he says that the only way that you could be denied a permit was to have a conviction or something like that. No. That's another statement that was in the press release. The reason why we had a five-unit limit was to prevent the creation of informal Airbnb hotels in residential areas. And the problem is the NICRA laws are a prime example of what the problem was. The NICRA laws disregarded the first ordinance that limited it to five, and they rented out 19. Nineteen units, which caused, according to the city council, a lack of long-term housing availability, lack of street parking available on those residential blocks, and a host of other problems. So, the city council, after considering this, I think 80 people spoke at a city council meeting, and a ton of other people actually spoke to the city council members. They made a decision to place additional limits on short-term rentals, which was very reasonable and done in the interest of the public. So, just doubling back a little bit to reasonable investment back expectations point, are you saying that because some officials expressed reservations originally that that cuts against the argument of your adversary on that element? Yes, and it's not just some officials. It's the mayor, the mayor who my adversary says influenced them to actually invest. The only way a person could be influenced is if they completely disregarded the statements made by the mayor and the press release. So, it's my adversary's, well, the plaintiffs are picking and choosing what parts of those statements they want to rely on, and that's just not persuasive. You say this should have undermined their expectations. It clearly should have. It would have to a reasonable person. No reasonable person would have created short-term rental businesses exclusively focused on renting out properties full-time when the press release and the articles warned not to. Also, with regard to the media blitz that my adversary referred to, the other documents that my adversary refers to are two sets of articles. One category of articles are articles that have nothing to do with short-term rentals. For example, on I think page 192 of the appendix, my adversary cites an article about Stephen Fulop that was published when he was elected, and that article talked about attracting young professionals to Jersey City to live there full-time. In that article, the words entice and induce were used, but not in the context of short-term rentals, just in general. But my adversary shoehorned those two words into the brief, but if you read the article, it has nothing to do with short-term rentals. The second category of articles are short articles not written by Jersey City officials and articles that do not contain quotes from Jersey City officials, but are just short articles from random reporters that summarized the ordinance, and that's what he considered a media blitz. That is not something that a reasonable person would have relied on when creating a business. Therefore, that completely undermines their investment-backed expectations argument. Also Mr. Chambers, could you give me a statement of what it is that the city is requesting in this case? The city is simply requesting that the district court's holding be affirmed. That is it. The city is requesting that the district court's holding be affirmed. And what was the holding? The holding was dismissing the plaintiff's complaint in its entirety. So Mr. Chambers, the biggest issue here is the takings issue, but I do want to spend a few minutes talking about contract clause. So you heard your friend on the other side, Mr. Van Splinter, talk about there are two sets of contracts here. There are long-term leases. I'm not so troubled about those because you could still have the leases, but I'm more troubled about the suggestion that there are a bunch of existing short-term bookings that were not covered by the transition period that apparently, you know, you heard your friend summarize that the plaintiff's certifications go through a number of these. Under Blaisdell, that's an existing contract, right? Why isn't at least the abrogation of those a contracts clause claim? It's twofold. If my adversary is correct, which he is not, but if my adversary is correct, then there are very, very few bookings that we're talking about. Okay. Very few. Very few. So it's very minor. However, with regard to the long-term leases, all, and this goes back to another question that my adversary was asked, all the long-term leases that were in effect at the time that the ordinance was passed expired during the interim period before the. The long-term leases. Yes. That's fine. But the short-term bookings. The short-term bookings. The statement that was in my adversary's papers were short-term bookings are rarely ever made fully in advance. So I don't think there are any short-term bookings that were abrogated because this ordinance allowed for a, I think, 18-month grace period, and I don't know of any short-term leases that are booked so far in advance. So it's our position that if he's correct, very few, but we believe he's not corrected that any short-term leases were in effect. All right. On rebuttal, I'll ask him to give us what chapter and verse he can about that. So, all right. So another, in my closing moments, my overall point that I want to make is there's an overall problem with the entire argument. Plaintiffs, they don't control any unique properties. This is not like a mill that can be used for nothing else besides milling or something like that. They control run-of-the-mill apartments and homes in a residential area that's similar to their neighbor's houses. But the problem with their argument is they're alleging that a taking is occurring. Their argument is singular to them, and it's based on the business model that they want and not whether the property actually retains value. Because something that my adversary hasn't addressed and needs to be addressed is all the properties in question that are owned by the plaintiffs, there is no argument that those properties are now worth less on the open market. Arguably, they're worth substantially more. So if they did sell the property, it would be at a substantial profit. Also, with regard to the soon plaintiffs, which would be the only ones that don't fall into that category, their problem is they've always been in debt. In fact, according to the certifications and support of the pleadings, they went into so much debt to start their business that they could barely pay their monthly living expenses. And they've been in debt ever since. Also, if we look at a time frame. Can I ask you, so what is it that they're doing wrong? I'm trying to follow where really the disagreement is in this case. Well, the main disagreement is that the plaintiffs want unlimited short-term rentals, and Jersey City believes that unlimited short-term rentals are detrimental to the public good. Short-term rentals are defined as what? Rentals that are less than, leases that are less than 28 days. And by unlimited, does that mean as many people as you can get into the structure, or is there a specified limit that cannot be exceeded? Go ahead. The number of people in the structure is not affected. It's how many rentals you can do during a period. So, for example, if you have one apartment, one one-room apartment, one one-room apartment, how many times can you rent that one one-room apartment during a year? Jersey City says there should be a minimum of, there should be some limitations on how many times you can turn over that one room, because if you're constantly turning it over, it's detrimental to the entire city for numerous reasons that are articulated in our brief. And my adversary says it's not. That's... So, you can turn the room over as many times as you have a demand for it, whether it's 180 or 90 or... Well, if you extrapolate that, and there's many rooms across... But what's the point from the standpoint of the city? The standpoint of the city is if you take a lot of potential long-term dwellings, potential dwellings that can be used for long-term leases. Long-term leases are leases like year leases, two-year leases. If you take a lot of the stock that's available for that and you allocate that to short-term rentals, then there's a lack of available housing for the citizens for long-term use. Just one last question. Could you point out exactly what Mr. Splinter's clients or the people that he represents are doing wrong? Currently, under the new ordinance, I don't know if they're doing anything wrong. Under the old ordinance, one set of plaintiffs, the Nikolaus, were violating the ordinance because... Several things are wrong with this argument. With regard to your point on what they're doing wrong, I can go, the Nikolaus were violating the old ordinance. That's exactly what they were doing wrong. They were renting out too many properties when the ordinance only permitted for five. But you're saying they were violating the old ordinance? Yes. So there is a new ordinance. There is a new ordinance. Are they violating that? I do not know. Well, then what is the beef? The old ordinance. Like, the plaintiffs want the old ordinance to become effective again and the new ordinance to go away, and we want the new ordinance to stay. I see. I think I see. Okay. Thank you. Okay. Thank you, counsel. Thank you. Mr. Ben Splinter? Yes, Your Honor. Why isn't the 18-month transition period sufficient here with the short-term bookings? The 18-month, if I'm not mistaken, was applicable only to the long-term rental. Okay. I could be wrong. I believe that's the case. Your Honor, I bluntly disagreed with you about the short-term bookings, so I want to hear your response. Well, I can point to the best I can do right now is point to, in the record, A248, paragraph 89, where the NECRA laws identify approximately 75 or so bookings that they were losing by virtue of the operation of the new ordinance, and I did find a similar statement from Kwong Ho-Tang. That's found at A262, referencing 10 bookings that were lost. So at least through my scramble through the record right now, those are some bookings of the short-term nature that were lost. I don't see anything specifically. On Airbnb, landlords wind up canceling bookings.  So are there penalties that they've had to pay out of pocket as a result of any of these cancellations, or are these just reservations that were then canceled without penalty? I can't speak to any potential penalties they'd have to pay. You can't speak to that. We know there were some bookings. We don't know whether there were any bookings. Damages apart from lost expectations. I mean, I would argue that this is more than a loss. That's a lost contract. I understand that that contract may be voidable for other reasons by other parties, but it was voided. I mean, it's a lost contract. But if the damages from the loss of contract are zero out of pocket, it's just an expectations matter, you know, it'll weigh more heavily in the calculus the more that your clients have lost. Understood, and I understand Your Honor's question. I can't speak to whether there are additional fees or penalties, or if there is a detriment vis-à-vis the property owner's relationship with Airbnb, kind of like in the Uber situation when Uber drivers reject a pickup and then that negatively impacts them. If we were to give you a chance to submit a short supplemental letter brief, is there evidence in the record that you would be able to give us? I mean, I don't want extra record information. Understood. I'm curious whether you need a few days to collect whatever. And I appreciate the opportunity, Your Honor. I'll review the record and we'll determine. I genuinely don't know whether the issue that you're pinpointing on right now, the potential additional harm other than the lost contract. Obviously, the meta harm is fully part of the record, the lost contract, but also the lost investments, the furniture and the like that was all purchased.  As I'm understanding, Your Honor, you're asking if there's specific penalty-type provisions in the Airbnb, which would be found in the record, and I will find out. Okay. Yeah, and that could be broad, as you said. If there's a negative reputational harm or something else, apart from loss of the opportunity to earn a profit on Airbnb, that's a lost profit. Are there any other affirmative losses?  If I may, and I see the red letter. If you do submit us something, the adversary will have a chance to give you a week to reply if, in fact, a letter is forthcoming.  Thank you, Your Honor. Of course. Thank you. If I may just, in quick reply, as to the net for loss, all I would do is refer Your Honor to footnote 12 of the district court's decision where he addresses the issue of their ministerial failure to obtain that license and the district court properly disposed of that line of argument. And quickly, because I realize I'm out of time, as to the party house situation, I would just state that the 15.177 clearly permitted far more than one or two owner-occupied rooms, and it did not abrogate laws of nuisance or other things, which obviously were still in place to prevent any of the negative impacts that the city was concerned about. And as far as the enticement issue goes, I just beg Your Honors to review the record, read the mayor's statements, read the statements of the other city officials, the press release, the mayor's article in Huffington Post, and the language of the ordinance itself, and the issue of whether these reasonable investment expectations were, in fact, reasonable, I think is quite clear. The remedy that you're seeking? The remedy we are seeking, injunction of the enforcement of 19-077 and or compensation and damages based on, but essentially in that, if not injunction, then obviously overturning the dismissal so we can go back to district court and litigate on the takings claim and the related substantive due process and contracts claims from a damages perspective then. Thank you, counsel. Thank you, Your Honor. We will take this case under advisement. Thank counsel for their excellent briefing and oral argument today, and we wish you good health and be well. Thank you.